Andrew Rozynski, Esq. (Pro Hac Vice to Be Filed) #AR3228
Attorneys for Plaintiffs
24 Union Square East, Fourth Floor
New York, NY  10003
Phone: (212) 353-8700
Email: arozynski@EandBlaw.com

Jared Allebest, #13485
Attorney for Plaintiffs
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CURT RADFORD, an individual and ROES I-X<br><br>Plaintiff,<br><br>v.<br><br>UTAH STATE UNIVERSITY CREDIT UNION; an organization GOLDENWEST FEDERAL CREDIT UNION d/b/a/ GOLDENWEST CREDIT UNION, an organization and ROES I-X<br><br>Defendants | COMPLAINT<br><br>Civil No. 1:19-cv-00089-BSJ<br><br>Judge Bruce S. Jenkins<br><br>Jury Trial Requested |

## **COMPLAINT**

Plaintiff, CURT RADFORD, by and through his undersigned counsel, sues Defendants UTAH STATE UNIVERSITY CREDIT UNION ("USU Credit Union") and GOLDENWEST FEDERAL CREDIT  UNION ("GFCU"), (collectively, "Defendants"), and states:

## **PRELIMINARY STATEMENT**

1.     Mr. Radford, an individual who is deaf, brings this action for declaratory, equitable and injunctive relief, and for compensatory damages, against Defendants Utah State

University Credit Union and Goldenwest Federal Credit Union. Defendants discriminated against Mr. Radford on multiple occasions by refusing to accept his calls and requiring him to submit extensive documentation verifying his identity because he is deaf.  Defendants' conduct violates Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq* as well as Section 504 of the Rehabilitation, 29 U.S.C. § 794 *et seq.*

## JURISDICTION

2.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (i) Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this Complaint occurred within this District.

## PARTIES

4.     Plaintiff Curt Radford resides at 736 E. 480 N. Hyde Park, UT 84318. Mr. Radford is deaf and substantially limited in the major life activities of hearing and speaking.

5.     Defendant Utah State University Credit Union ("USU Credit Union") has a principal place of business at 5025 SOUTH ADAMS AVENUE OGDEN, UT 84403.

6.     Defendant Goldenwest Federal Credit Union d/b/a/ Goldenwest Credit Union ("GCU") is a domestic, non-profit corporation which has its principal place of business at 5025 SOUTH ADAMS AVENUE OGDEN, UT 84403.

7.     Upon information and belief, GCU merged with USU Credit Union, and USU Credit Union is a Division of Goldenwest Credit Union.

8.      Upon information and belief, Defendants markets, operates, and maintains 38 branches and locations throughout Utah, and operates online and mobile branches.

9.      Upon information and belief, Defendants holds out their online and mobile services to consumers, advertising that they can complete transactions from application to closing with their mobile devices and personal computers.

10.      Upon information and belief, Defendants hold more than $1.4 billion in assets.

11.      Upon information and belief, Defendants receive federal funding.

## FACTUAL ALLEGATIONS

12.      Mr. Radford is deaf. He is substantially limited in the major life activities of hearing and speaking.

13.      Mr. Radford has been a member of the USU Credit Union since 2007. He has regularly conducted banking transactions through Defendants online banking system.

14.      On or about November 24, 2018, Mr. Radford discovered fraudulent activity associated with his banking account at USU Credit Union.

15.      On the same day, Mr. Radford called the USU Credit Union through the VRS to report the above fraudulent activity.

16.      Video Relay Service (VRS) is a form of Telecommunications Relay Service (TRS), regulated by the Federal Communications Commission (FCC). According to the FCC, VRS works as follows: "[t]he VRS caller, using a television or a computer with a video camera device and a broadband (high speed) Internet connection, contacts a VRS [communications assistant (CA)], who is a qualified sign language interpreter. They communicate with each other in sign language through a video link. The VRS CA then places a telephone call to the party the VRS user wishes to call. The VRS CA relays the conversation back and forth between the parties

-- in sign language with the VRS user, and by voice with the called party. No typing or text is involved." *See* Federal Communications Commission, Video Relay Services, *available at* http://www.fcc.gov/guides/video-relay-services.

17.     The FCC has promulgated regulations requiring CAs to maintain strictly confidential any information exchanged during relay calls and prohibiting CAs from changing the content of the message in any manner. *See* 47 C.F.R. § 64.604(a).

18.     Mr. Radford called USU Credit Union and connected with the Defendants' representative.

19.     Because Mr. Radford was using the Sorenson VRS service, Defendants became aware that Mr. Radford is deaf and that he was communicating via an interpreter.

20.     Defendants' representative informed Mr. Radford that per Defendant's policy, they cannot provide information and services to Mr. Radford through a VRS CA.

21.     Mr. Radford, through the CA, informed Defendants that they should provide equal access to banking services via VRS CA, and suggested that he can provide answers to his security questions through the VRA CA to verify his identity, just as any other hearing person would do.

22.     Defendants' representative repeatedly refused to provide any information through the VRS call and informed Mr. Radford that he would need to physically visit the branch office to receive services and to submit an authorization for a CA to be able to communicate on his behalf.

23.     Upon contacting the branch office, Mr. Radford was informed by that he needs to provide the name of a specific interpreter who is authorized to interpret the call.

24.     Mr. Radford requested the Defendants' branch office to forward their VRS use and interpreter authorization policy for his review.

25.      In response to the above request, on November 29, 2018, Braedn Stephensen, Defendants' senior contact center representative, wrote in an e-mail to Mr. Radford stating that the Defendants can alternatively accept the interpreter authorization through a secure website message. Mr. Stephensen did not provide any policies requested by Mr. Radford.

26.     It is infeasible for Plaintiff to provide the name of a specific interpreter authorized to interpreter communications through VRS, because the VRS connects deaf callers with a qualified interpreter as the call is received, on a random basis. In other words, each time Mr. Radford makes a call through a VRA, he would be assigned a different CA, and he does not know which CA would assist him under he makes the call. Therefore, Defendants' policy fails to provide deaf individuals with equal access to services enjoyed by hearing individuals.

27.     Mr. Radford requested to see the Defendants' policy regarding communications through the VRS, but Defendants refused to provide the same.

28.     As a result of the Defendants' failure to provide services to Mr. Radford through a VRS, he was unable to enjoy the benefits and services provided by Defendants, experienced frustration, anxiety, humiliation and anger, and was subjected to an increased risk of ongoing fraudulent activity on his account, as well as emotional distress.

29.     Mr. Radford intends to continue to use Defendants' services to conduct banking transactions, if Defendants will enable communication through the use of VRS CAs.

## COUNT I: TITLE III OF THE AMERICANS WITH DISABILITIES ACT

30.     Mr. Radford repeats and realleges all previous paragraphs in support of this claim.

31.     Mr. Radford is substantially limited in the major life activities of hearing and speaking and is therefore an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2).

32.     Defendants own, lease, or operate a bank branch office which offers mobile and online service, which is a "service establishment," and therefore a "place of public accommodation" pursuant to 42 U.S.C. § 12181(7)(F).

33.     Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

34.     Discrimination under Title III of the ADA includes "subject[ing] an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

35.     Discrimination also includes "afford[ing] an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

36.     Discrimination furthermore includes "provid[ing] an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege,

6

advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(iii).

37.     Specific discriminatory prohibitions under Title III of the ADA include "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182 (b)(2)(A)(i).

38.     Specific discriminatory prohibitions under Title III of the ADA also include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182 (b)(2)(A)(ii).

39.     Specific discriminatory prohibitions under Title III of the ADA furthermore include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182 (b)(2)(A)(iii).

40.     The regulations implementing Title III of the ADA, promulgated by the United States Department of Justice, require that "[a] public accommodation shall respond to telephone calls from a telecommunications relay service . . . in the same manner that it responds to other telephone calls." *See* 28 U.S.C. § 36.303(d)(4).

41.     Defendants discriminated against Mr. Radford by refusing to accept his VRS calls, failing to take immediate action regarding his fraud report, and imposing additional requirements in the form of authorization of an individual interpreter which would be infeasible in the context of a VRS service, in violation of all of the above-referenced statutory and regulatory provisions.

42.     Because this discrimination occurred pursuant to Defendants' policy, Defendants are likely to continue their discriminatory behavior against deaf or hard of hearing individuals without an injunction.

## COUNT II: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

43.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

44.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

45.     At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

46.     At all times relevant to this action, Defendants have been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

47.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

48.     Defendants intentionally discriminated against Plaintiff, solely on the basis of disability, by denying him meaningful access to the services, programs, and benefits the Defendants offer to other individuals, by refusing to accept the VRS calls and imposing additional requirements in the form of authorization of an individual interpreter which would be infeasible in the context of a VRS service, in violation of all of the above-referenced statutory and regulatory provisions.

49.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf persons.

50.      Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' intentionally discriminatory conduct as alleged above, pursuant to 29 U.S.C. § 794(a).

51.     Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **RELIEF**

WHEREFORE, Plaintiff Curt Radford respectfully requests that the Court provide the following relief:

a.     Issue a declaration that Defendants' policies, procedures, and practices regarding relay calls have subjected Mr. Radford to discrimination in violation of Title III of the Americans with Disabilities Act and the Rehabilitation Act;

b.     Enjoin Defendants from any policy, procedure, or practice that will deny Mr. Radford full and equal access to Defendants' services.

c.      Order Defendants to develop and comply with written policies, procedures, and practices to ensure that Defendants do not discriminate against Mr. Radford and other individuals who are deaf and hard of hearing.

d.      Order Defendants to respond to calls placed through relay services by Mr. Radford or other deaf or hard of hearing individuals in the same manner that they respond to other calls, and to place calls through relay services to Mr. Radford or other deaf or hard of hearing individuals in the equal manner that they place other calls.

e.      Order Defendants to implement an appropriate training program for Defendants' employees about Mr. Radford's rights, the rights of other individuals who are disabled, and about Defendants' policy and procedures for providing access to its customers.

f.      Award Mr. Radford compensatory damages.

h.      Award Mr. Radford his attorneys fees and costs; and

h.      Award any and all other relief that the court deems necessary and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for

all of the requested relief that a jury may award.

Dated:   August 9, 2019

EISENBERG & BAUM, LLP

By:

_____
Andrew Rozynski, Esq. (Pro Hac Vice to Be Filed)
arozynski@EandBlaw.com

Attorneys for Plaintiffs
Office and Post Office Address
 24 Union Square East, Fourth Floor
 New York, NY  10003
 (212) 353-8700


/s/: Jared Allebest_____
Jared Allebest,
#13485 (UT), #034640 (AZ), #325086 (CA)
Attorney for Plaintiff
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically served and/or personally served this 9th day of August, 2019, to the following individuals

Goldenwest Credit Union
5025 South Adams Avenue
South Ogden, UT 84403

Utah State University Credit Union
5025 South Adams Avenue
South Ogden, UT 84403

/s/: Andrew Rozynski,
Andrew Rozynski, Esq. #AR3228
Attorneys for Plaintiffs
24 Union Square East, Fourth Floor
New York, NY 10003
Phone: (212) 353-8700
Email: arozynski@EandBlaw.com

/s/: Jared Allebest
Jared Allebest, #13485
Attorney for Plaintiff
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com